**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**DAVID LAWSON,**

      Petitioner,                        **CASE NO. 2:10-CV-548**
                                              **JUDGE WATSON**
      v.                                  **MAGISTRATE JUDGE KING**

**WARDEN, ROSS CORRECTIONAL**
**INSTITUTION,**

      Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition*, Doc. No. 2, Respondent's *Return of Writ,* Doc. No. 7, Petitioner's *Traverse,* Doc. No. 12, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## FACTS and PROCEDURAL HISTORY

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of this case as follows:

> Appellant was indicted on twelve counts of child sexual abuse. Appellant filed a motion to suppress statements he made to law enforcement officers, which motion was overruled. After a jury trial, Appellant was convicted on ten of the twelve counts, including rape, attempted rape and eight counts of gross sexual imposition. Appellant was sentenced to an aggregate term of 30 years in prison.
>
>           \*                             \*                             \*
>
> Appellant was interviewed by Detectives Slayman and Loper at the Licking County Sheriff's Office concerning the abuse of three pre-teen girls, two of whom are Appellant's step-daughters. Appellant drove himself to the interview and was advised he was not under arrest; he was free to leave; and he did not have to answer questions and could stop answering at any time. Appellant was not told he had

> a right to counsel nor advised anything he said could be used against him in court.
>
> Appellant made incriminating statements during the interview. Detective Slayman decided to arrest Appellant before the interview concluded. When asked to consent to a recording of his statement, Appellant invoked his right to counsel and the interview ended. The entire interview lasted almost three hours and Appellant was arrested immediately after its conclusion.

*State v. Lawson,* 2009 WL 91301, at *1 (Ohio App. 5th Dist. Jan. 14, 2009). Petitioner was indicted by the July 27, 2007, term of the Licking County grand jury on nine counts of gross sexual imposition, one count of attempted rape, and two counts of rape. *Exhibit 1 to Return of Writ.* Following a March 2008 jury trial, at which Petitioner was represented by counsel, Petitioner was convicted on eight counts of gross sexual imposition, attempted rape, and rape. The trial court imposed an aggregate term of thirty years incarceration. *Exhibit 5 to Return of Writ.* Represented by new counsel, Petitioner filed a timely appeal. He raised the following assignments of error:

> I. THE TRIAL COURT PREJUDICIALLY ERRED IN NOT SUPPRESSING THE DEFENDANT–APPELLANT'S STATEMENTS UNDER ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
>
> II. THE DEFENDANT–APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL UNDER ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
>
> III. THE DEFENDANT–APPELLANT WAS DEPRIVED OF HIS RIGHT AGAINST DOUBLE JEOPARDY UNDER ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN THE TRIAL COURT IMPOSED CUMULATIVE/CONSECUTIVE SENTENCES FOR THE SAME OFFENSES INVOLVING THE SAME VICTIMS (INDICTMENT AND FINAL JUDGMENT ENTRY).

*State v. Lawson*, 2009 WL 91301, at *1. On January 14, 2009, the appellate court affirmed the trial court's judgment. *Id*. On June 17, 2009, the Ohio Supreme Court dismissed Petitioner's appeal. *State v. Lawson*, 122 Ohio St.3d 1410 (2009).

On June 14, 2010, Petitioner filed the *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleges that he is in the custody of the Respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. Petitioner's Fifth Amendment right against self-incrimination was violated when police interrogated him without advising him of his constitutional rights.
>
> 2. Petitioner was twice put in jeopardy for the same offense in violation of the Fifth Amendment when he received multiple sentences for a single assaultive act with a single animus, and single victim.
>
> 3. Defense counsel's performance fell below the minimum standard expected of an attorney in a criminal case and required by the Fifth Amendment when counsel failed to challenge the violation of defendant's right to protection against self-incrimination.

It is the position of the Respondent that Petitioner's claims are without merit.

## CLAIM ONE

In claim one, Petitioner asserts that he was denied his right against self-incrimination when police interrogated him without first advising him of all his constitutional rights. In his *Traverse*, Petitioner also alleges that police unconstitutionally denied him his right to counsel by interrogating him without first advising him of his rights under *Miranda v. Arizona,* 384 U.S. 436 (1966). The state appellate court rejected this claim, reasoning as follows:

> Appellant argues because he was subjected to the functional equivalent of interrogation and was a suspect before being asked to come to the sheriff's office, Appellant was entitled to his full *Miranda* warnings prior to being interviewed. Appellant's argument is

3

> premised upon the assumption his interrogation was custodial. While we do not disagree it was an interrogation, we disagree it was custodial.
>
> Appellant relies on *State v. Buckholtz* (1984), 11 Ohio St.3d 24, 462 N.E.2d 1222, as support for his argument. We find Appellant's reliance misplaced.
>
> In *Buckholtz,* the Ohio Supreme Court noted the State did not raise the question of whether the defendant therein was in custody. The State's only argument was *Miranda* did not apply because the defendant was only convicted of a misdemeanor. *Id.,* at pg. 26, 462 N.E.2d 1222, FN. 2. The Ohio Supreme Court assumed the State conceded the defendant was in custody. *Id.* Such is not conceded in the case *sub judice*.
>
> We find upon the facts presented *supra*, Appellant was not in custody at the time he made the incriminating statements. The fact Appellant was arrested after the interview does not serve to change his non-custodial status at the time the incriminating statements were made into a custodial one.
>
> Appellant's. . . assignment of error is overruled.

*State v. Lawson,* 2009 WL 91301, at *1-2.

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d).

> A state court's determination is contrary to federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or on indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 412–13 (2000). A state court's decision is an

4

>unreasonable application of federal law when the state court correctly identified the applicable legal principle from Supreme Court precedent, but applied that principle to the facts before it in an unreasonable manner. *Id.* at 413.

*Maldonado v. Wilson*, 416 F.3d 470, 475 (6th Cir. 2005). Petitioner has not met this standard here. *See Williams v. Taylor*, 529 U.S. at 362.

Petitioner complains that police never advised him of his rights under *Miranda*, or of his right to an attorney. He specifically disputes the state court's finding that he was not in custody during his interrogation. According to Petitioner, two detective – "brandishing firearms on their side" – came to his house, told him that he was a suspect in a crime and asked him to follow them to the police station. *Traverse,* p. 6. He was led into the police station through a locked door; he did not feel free to leave. Police questioned him for three hours in a windowless eight-by-eight room; an officer sat by the door. An officer escorted him to the bathroom. Petitioner thought that he was under arrest. *Id.* According to Petitioner, he fell prey to the deceptive and coercive tactics of police. *Id.*, at 8.

The Fifth Amendment to the United States Constitution provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." The privilege against self-incrimination prohibits the use of any statement against a criminal defendant "stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. at 444. The Supreme Court in *Miranda* defined "custodial interrogation" to mean "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id*. at 444. A police officer's subjective intention to arrest a suspect has no bearing on the determination of whether a person is "in custody." *Stansbury*

*v. California*, 511 U.S. 318 (1994)(*per curiam*)(custody determination depends on objective circumstances of interrogation, not on subjective view of either the police or the person being questioned); *Berkemer v. McCarty*, 468 U.S. 420 (1984)(automobile driver not "in custody" so as to require *Miranda* warnings despite police officer's unarticulated intent to arrest). The question of whether a suspect is "in custody" within the meaning of *Miranda* depends on "all of the circumstances surrounding the interrogation" and "how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action." *Yarborough v. Alvarado,* 541 U.S. 652, 663 (2004)(quoting *Stansbury,* at 322, 325); *see also Thompson v. Keohane,* 516 U.S. 99, 111 (1995)("given th[e] circumstances, would a reasonable person" have felt free to leave).

A person subjected to custodial interrogation must be warned that he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed. *Miranda.* Any voluntary statements made by a suspect, however, are admissible regardless of whether police provided *Miranda* warnings. *United States v. Murphy,* 107 F.3d 1199, 1204 (6th Cir.1997). Police must immediately cease questioning if a suspect clearly asserts his right to counsel. *Edwards v. Arizona*, 451 U.S. 477, 484 (1981); *see also United States v. Hurst,* 228 F.3d 751, 759–60 (6th Cir. 2000)(where a request to cease questioning is "ambiguous or equivocal," cessation of questioning is not required.). Moreover, a statement obtained in violation of *Miranda* is subject to the harmless error doctrine. *Arizona v. Fulminante,* 499 U.S. 279, 310 (1991).

Here, Officer Chris Slayman testified at the hearing on the motion to suppress that he and Officer Danny Loper met Petitioner at his home regarding sexual abuse allegations that had been

made against him by several children. *Hearing, Motion to Suppress*, Doc. No. 8, at 8-9. They were wearing plain clothes, with their badges and firearms on their belts. *Id*. Officer Slayman introduced himself, explained that allegations had been made against Petitioner by his stepdaughters, that they wished to obtain a statement from Petitioner and that, if Petitioner were willing, he could come to the sheriff's office for a voluntary interview. *Id*. at 9. Police never told Petitioner that he was under arrest. To the contrary, Officer Slayman affirmatively advised Petitioner that he was not being placed under arrest. *Id*. Petitioner followed the police in his own car to the sheriff's office. The outside door to the lobby was unlocked, but inside there was a glass door that had to be opened from the outside by a magnetic swipe. *Id*. at 11. The door did not lock from the inside. *Id*. at 12. The group entered the interview room and Officer Slayman again told Petitioner that he was not under arrest, that he was free to leave and not answer any questions, and that he was free to stop the interview at any time. *Id*. The officers did not handcuff or restrain Petitioner in any manner and Petitioner never indicated that he wanted to leave. *Id*. He was willing to talk to the police. *Id*. at 12. The interview lasted approximately three hours. *Id*. at 13. Police advised Petitioner that he could take a break or stop the questioning at any time. *Id*. At some point during the interview, Petitioner asked for a break. Officer Slayman gave Petitioner a Diet Pepsi and Petitioner went outside to smoke a cigarette. *Id.* at 14. Officer Loper accompanied Petitioner. *Id.* Petitioner never indicated that he wanted to leave. *Id.*

On this record, the state appellate court's finding that Petitioner was not in custody was not contrary to or an unreasonable application of federal law, or based on an unreasonable determination of the facts in view of the evidence presented. *See* 28 U.S.C. § 2254(d), (e).

Claim one is without merit.

7

**CLAIM TWO**

In claim two, Petitioner asserts he was convicted and sentenced in violation of the Double Jeopardy Clause when the trial court imposed multiple sentences for "a single assaultive act, with a single animus and a single victim." *See Petition*. In his *Memorandum in Support*, Exhibit attached to *Petition*, Petitioner also argues that he was denied fair notice of the charges against him, because the indictment contained multiple, undifferentiated "carbon copy" counts, including large time frames. Petitioner also contends that the State failed to introduce evidence differentiating the various charges; as a consequence, he was denied fair notice of the charges against him sufficient to enable him to present a defense and protect him from the possibility of future convictions involving the same acts. *See Memorandum in Support; Traverse*   The claims based on lack of fair notice, however, have never been presented to the state appellate court. These claims are therefore procedurally defaulted.

**Procedural Default**

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless,* 459 U.S. 4, 6 (1982) ( *per curiam* ); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual

8

prejudice resulting from the alleged constitutional error. *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a Court must undertake a four-part analysis when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, the Court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court determines that the petitioner failed to comply with an adequate and independent state procedural rule, then the petitioner must demonstrate good cause for his failure to follow the procedural rule as well as actual prejudice from the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir.1985).

He may now no longer do so, under Ohio's doctrine of *res judicata*. *See State v. Cole,* 2 Ohio St.3d 112 (1982); *State v. Ishmail,* 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967). The state courts were never given an opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default.

The State of Ohio requires that all claims be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata. State v. Perry*, 10 Ohio St.2d 175 (1967), syllabus ¶¶8, 9. The Court finds that Ohio's *res judicata* rule is adequate and independent under the third part of the

*Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson,* 501 U.S. 722, 732-33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia,* 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky,* 466 U.S. 341, 348-351 (1984)); *see also Barr v. City of Columbia,* 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers,* 377 U.S. 288, 297 (1964); *see also Jamison v. Collins,* 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief.  *Coleman v. Mitchell,* 268 F.3d 417, 427-29 (6th Cir.2001); *Seymour v. Walker,* 224 F.3d 542, 555 (6th Cir.2000); *Byrd v. Collins,* 209 F.3d 486, 521-22 (6th Cir.2000); *Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir.1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata,* to review the merits of claims because they are procedurally barred. *See State v. Cole,* 2 Ohio St.3d at 112; *State v. Ishmail,* 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law. Accordingly, this Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.  Petitioner has waived his claim that he was denied fair notice of the charges against him and convicted on multiple undifferentiated counts that subject him to the possibility of future prosecution on the same charges.  Furthermore,

10

Petitioner has failed to establish cause and prejudice for this procedural default.  Finally, the record fails to reflect that this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *See Murray v. Carrier,* 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333.

This Court therefore concludes that Petitioner has waived federal habeas corpus review of his claims that he was denied fair notice of the charges against him, in violation of the Double Jeopardy Clause, due to undifferentiated charges with lengthy time frames.

Liberally construing Petitioner's pleadings, the Court presumes that Petitioner also asserts in these proceedings a claim that his convictions and sentence violate the Double Jeopardy Clause because all of the charges against him should have been merged into one rape conviction, and that his maximum sentence should have been no more than eight years.  This is the same claim raised by Petitioner in the Ohio Court of Appeals.  *See Exhibit 9 to Return of Writ*.  This claim is without merit.

> The state appellate court rejected this claim, reasoning as follows:
>
> > Appellant maintains his constitutional right against double jeopardy was violated by the imposition of cumulative/consecutive sentences for the same offenses involving the same victim. Appellant notes the ten counts upon which he was convicted involved the same offenses (gross sexual imposition, attempted rape and rape) against the same three victims.
> >
> > Specifically, Appellant submits counts 2–6 involve identical charges of gross sexual imposition against the same victim. Appellant contends count 7 (attempted rape) involved the same victim during the same dates as counts 2–6. Appellant asserts counts 9 and 10 involved charges of gross sexual imposition and rape against another victim with the same time duration for both. Finally, Appellant argues count 12 (gross sexual imposition) involved the same victim as count 8, and occurred during the same time frame. Appellant's sole citation to the record in support of his assertions is the indictment

11

>filed in this case.[FN3]
>
>>FN3. We find Appellee's conclusory response the charges were separate and distinct acts in terms of events, time frames, locations and victims of no help in our analysis as Appellee has not given us a factual rendition to support its conclusion nor any reference to where in the record such conclusion finds its support.
>
>>We reject Appellant's conclusion all the charges of gross sexual imposition merge merely because they involve the exact same charge. We reject Appellant's conclusion the attempted rape and rape convictions merge merely because attempted rape is a lesser-included offense of rape. Appellant has failed to cite to the trial record where the evidence establishes the offenses were committed with the same animus, let alone not committed separately. Having failed to affirmatively demonstrate in the record the error of which he complains, we overrule this assignment of error.

*State v. Lawson*, 2009 WL 91301, at *2.

As noted by the state appellate court, the charges against Petitioner involved three different victims, and separate acts. Petitioner does not indicate, and this Court is unable to discern from the record, in what manner his convictions were duplicative or constitutionally invalid. He has failed to establish that federal habeas corpus relief is warranted. 28 U.S.C. § 2254(d), (e).

Claim two is without merit or procedurally defaulted.

## CLAIM THREE

In claim three, Petitioner asserts that he was denied the effective assistance of trial counsel because his attorney failed to object to the admission of his statements into evidence, failed to object to the indictment, which failed to provide him with fair notice of the charges against him, failed to object to violation of the Double Jeopardy Clause, failed to properly cross examine witnesses, failed to present an alibi defense, failed to object to the admission of hearsay evidence and failed to investigate or subpoena defense witnesses. *See Memorandum in Support; Traverse*. Again,

Petitioner presented to the state courts only a claim of ineffective assistance of trial counsel based on his attorney's failure to challenge the admission of his statements. None of his other claims of ineffective assistance of trial counsel have been presented to the state courts. Further, Petitioner may now no longer do so, under Ohio's doctrine of *res judicata*. *See State v. Cole,* 2 Ohio St.3d at 112; *State v. Ishmail,* 67 Ohio St.2d at 16. For the reasons previously discussed, Petitioner has procedurally defaulted these other claims of ineffective assistance of counsel.

To the extent that Petitioner's claims of ineffective assistance of trial counsel may rely on matters not apparent from the face of the record (*i.e.*, failure to call defense witnesses, failure to investigate an alibi defense), these claims would properly have been raised in post conviction proceedings under O.R.C. § 2953.21. The time for filing such proceedings has long since expired and the record fails to reflect that Petitioner can meet the strict requirements for consideration of his claims in a delayed post conviction petition under O.R.C. § 2953.23. Moreover, these claims are plainly without merit; Petitioner does not even identify the names of any witnesses who could have presented exculpatory evidence on his behalf.

As to Petitioner's claim that he was denied effective assistance of trial counsel based on his attorney's failure to challenge the admission of his statements, this claim also lacks merit. The state appellate court rejected this claim as follows:

> Appellant argues his trial counsel was ineffective for failing to re-object at trial to the admission of Appellant's statements to the detectives because they should have been suppressed. Because we have found in our discussion of Appellant's first assignment of error, *supra*, the trial court did not err in overruling his motion to suppress, it necessarily follows trial counsel was not ineffective for failing to re-object at trial to that same evidence. Counsel is not ineffective for failing to object when there is no reasonable basis for success.

*State v. Lawson*, 2009 WL 91301, at *2.

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. at 687; *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result fo the proceedings would have been different. *Id*., at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*., at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate the ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Id.,* at 697.

The record reflects that trial counsel challenged the admission of Petitioner's statements by filing a motion to suppress evidence. The trial court, after a hearing, denied that motion. Trial counsel made a "continuing objection" to the admission of Petitioner's statements to police at trial. *Trial Transcript*, Volume II, at 210. Moreover, the state appellate court expressly held that the

issue had properly been preserved for appellate review. *State v. Lawson*, 2009 WL 91301, at *2.

In short, the Court concludes that Petitioner has failed to establish the ineffective assistance of trial counsel under the two-prong *Strickland* test, and has failed to establish that the state court's rejection of this claim warrants federal habeas corpus relief. 28 U.S.C. § 2254(d), (e).

Claim three is without merit or procedurally defaulted.

**WHEREUPON,** the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

### PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability

should issue.

                                          *s/ Norah McCann King*
                                          Norah McCann King
                                          United States Magistrate Judge

September 28, 2011